Tyson K. Hottinger (CA State Bar No. 253221)
    email: *thottinger@mabr.com*
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone: (949) 202-1900
Facsimile: (949) 453-1104

Kirk R. Harris (pro hac vice application pending)
    email:  *kharris@mabr.com*
Michael J. Howell (pro hac vice application pending)
    email:  *mhowell@mabr.com*
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile:  (435) 252-1361

Attorneys for Plaintiff ARRAY TECHNOLOGIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARRAY TECHNOLOGIES, INC., a New Mexico corporation, <br><br> Plaintiff, <br><br> v. <br><br> NEXTRACKER, INC., a Delaware corporation; FLEX LTD., a corporation; and DANIEL S. SHUGAR, an individual, <br><br> Defendants. | **COMPLAINT** <br><br> Civil Action No. 3:19-cv-5835 <br><br> Judge _____ <br><br> Jury Trial Demanded |

Plaintiff Array Technologies, Inc. ("Array") hereby complains against defendants NEXTracker, Inc. ("NEXTracker"), Flex Ltd. ("Flex"), and Daniel S. Shugar ("Shugar") (collectively, "Defendants") for the causes of action alleged as follows:

COMPLAINT

# INTRODUCTION

1. This is a case about the efforts of NEXTracker and its CEO, Daniel Shugar, along with NEXTracker's parent corporation, Flex, to try to expand NEXTracker's market share in the solar tracking industry through threats, intimidation, and coercion. On multiple occasions when NEXTracker's most consequential competitor, Array, hired independent engineering firms to evaluate different aspects of solar tracker technologies, Defendants have used threats against those engineering firms to suppress conclusions favorable to Array and its technology. These threats prompted one engineering firm, TÜV Rheinland PTL LLC ("TÜV"), to refuse to stand behind a report detailing a study Array paid TÜV to conduct and to issue a letter demanding Array cease publishing the report's conclusions—even as TÜV stated that it was not aware of any material inaccuracies in the report. Shugar and NEXTracker are now attempting to pressure DNVGL, another independent engineering firm Array hired, to suppress conclusions favorable to Array.

# THE PARTIES

2. Array is a corporation duly organized and existing under the laws of the State of New Mexico with its principal place of business located at 3901 Midway Pl NE, Albuquerque, New Mexico, 87109. Array is a leading innovator and provider of proprietary solar tracking technologies and equipment, selling its equipment, technologies, and related support both nationally and internationally.

3. Defendant NEXTracker is a Delaware corporation having its principal place of business at 6200 Paseo Padre Parkway, Fremont, California 94555. NEXTracker is a wholly-owned subsidiary of Flex.

4. Defendant Flex is a corporation having its principal place of business at 6201 America Center Dr., San Jose, California 95002.

5. Array is informed and believes, and thereupon alleges, that at all times relevant to this Complaint, defendant Shugar was and continues to be a resident of California.

## JURISDICTION AND VENUE

6. This is a civil action arising under the laws of the State of California, including but not limited to California Business & Professional Code § 17200 et seq.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Array, as a New Mexico corporation, is diverse from each defendant, who are both residents of the State of California. The matter in controversy exceeds the sum of $75,000.

8. This Court has personal jurisdiction over NEXTracker because NEXTracker has its principal place of business in the State of California and has continuous and systematic general business contacts in the state.

9. This Court has personal jurisdiction over Flex because Flex has its principal place of business in the State of California and has continuous and systematic general business contacts in the state.

10. This Court has personal jurisdiction over Shugar because Shugar is an individual residing in the State of California and has equally continuous and systematic general business contacts in the state.

11. Array also alleges on information and belief that defendants NEXTracker, Flex, and Shugar engaged in the acts here alleged, and out of which Array's claims arise, while located in California.

12. This Court's exercise of personal jurisdiction over NEXTracker, Flex, and Shugar is therefore consistent with the Constitutions of the United States and the State of California.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. All defendants are residents of the same state, so venue is proper in any district in California where a defendant resides. NEXTracker, Flex, and Shugar are residents of the Northern District of California.

## FACTUAL BACKGROUND

14. Array is a technological leader in the field of solar tracking equipment, and it markets and sells a variety of solar tracking related products.

COMPLAINT

3

15. Solar trackers are devices that "track" the movement of the sun and allow solar panels to rotate toward the sun throughout the day to maximize efficiency.

16. Array and NEXTracker are the two leading tracker suppliers in the United States and Australia. Array and NEXTracker compete for jobs throughout the United States and the world.

17. As Array and NEXTracker have competed in the marketplace, Defendants have increasingly used unfair business practices to increase and maintain NEXTracker's market share and have resorted to threats, intimidation, and coercion to compete with Array.

18. Array maintains its position as one of the top innovators in the solar tracking industry by making substantial investments in the research, development, and acquisition of cutting-edge technologies. The company also invests heavily in testing its technology against the products its competitors use.

19. Array uses a patented tracker architecture in which multiple rows of solar panels are linked together by a common driveshaft, a design choice by which only one motor and controller are used to rotate multiple rows of solar panels (a "linked-row architecture").

20. NEXTracker employs a design in which rows of solar panels are *not* linked together by a common driveshaft, but instead use an individual controller and motor for each row of solar panels (an "unlinked-row architecture").

Array's Engagement of TÜV

21. In November 2016 Array engaged an independent third-party engineering firm, TÜV Rheinland PTL, LLC ("TÜV"), to study and prepare a report comparing two different types of tracker architectures in the market, one of which is used by Array and the other is used by NEXTracker. The report assessed the risks associated with component failures, analyzed the relative operation and maintenance costs, and calculated the net present value of the two architecture types. TÜV issued its report titled "Risk and Economic Analysis on Two Tracker Architectures" on September 8, 2017 (the "TÜV Report").

COMPLAINT

22. The TÜV Report was published shortly before a large solar industry conference that is held each fall, called Solar Power International ("SPI"). Array intended to use the findings of the TÜV Report as part of Array's efforts to market its products and compete in the market.

23. The TÜV Report concluded that *inter alia* the linked row architecture, which happens to be the architecture that Array utilizes, had a significantly lower risk of catastrophic failure, had lower operation and maintenance costs, and thus had a higher net present value.

24. Array began to publish the results of TÜV's independent study, which highlighted the superiority of the tracker architecture Array uses as compared to the type of tracker architecture that NEXTracker (and other competitors) use.

25. On or about September 21, 2017, Flex's Vice President, Litigation & Disputes, Melissa Zujkowski, sent Array's general counsel a cease and desist letter demanding that Array discontinue its use of the TÜV Report.

26. TÜV initially appeared willing to work with Array to defend the validity of the report and resolve the issues between the two parties.

27. But upon information and belief, TÜV changed course when, in September 2017, NEXTracker and Shugar contacted TÜV and threatened to cut off work supply to TÜV (either directly or through NEXTracker's parent company, Flex) if TÜV failed to retract the TÜV Report. Upon information and belief, Flex was also part of these efforts and was involved in assisting NEXTracker and Shugar with these efforts. NEXTracker and Shugar increased the pressure on TÜV as Array began to publish the TÜV report and prepare for a webinar, scheduled for November 29, 2017, at which Array planned to discuss the report's conclusions with potential clients.

28. NEXTracker has a significant share of the global market in the solar tracking industry, which makes NEXTracker capable of carrying out its threat of diverting work away from TÜV. Additionally, upon information and belief, TÜV earns significant revenue from Flex on an annual basis.

29. Under Defendants' intimidation and threat of retaliation and retribution, TÜV complied with Defendants' demands.

30. In accordance with Defendants' demands, on or about October 2, 2017, TÜV retracted the report. It later sent a cease and desist letter to Array demanding that Array discontinue publishing or disseminating the TÜV Report until TÜV could conduct a further investigation—noting vaguely that NEXTracker had made certain allegations about the report.

31. Even as TÜV publicly retracted the report, it did not disavow any of the report's conclusions. TÜV noted in its cease and desist letter that it was not "aware of any material inaccuracies in the report" and had no "serious doubt about the truth of the statements in the report." TÜV merely cowed to threats from Defendants.

32. Array reached out to TÜV many times since October 2017 regarding the progress of TÜV's investigation into the accuracy of the report. TÜV has stated only that it continues to investigate.

33. Array demanded to know immediately if TÜV finds any material inaccuracies in the report, but TÜV has not identified any in the last two years. It has, however, reiterated that its study was independent and not biased in favor of Array in any way.

34. As a result of Defendants' undue pressure on TÜV and interference with the TÜV Report, Array lost the benefit of its bargain with TÜV. Specifically, Array retained TÜV to perform the independent analysis contained in the TÜV Report in order to assist Array in competing in the marketplace against NEXTracker by being able to show its customers and prospective customers the conclusions from TÜV—a reputable independent engineering firm—regarding differences in the linked-row architecture like Array uses as compared to the unlinked architecture like NEXTracker uses.

35. Given Defendants' unlawful pressure on TÜV leading to TÜV's retraction of the TÜV Report, the efficacy of the TÜV Report was diminished and Array's marketing efforts that relied on the conclusions of the TÜV Report were adversely affected.

36. For example, customers and prospective customers began inquiring of Array why the TÜV Report had been retracted and began to question the TÜV Report's findings. Such questions and uncertainty about the TÜV Report caused harm to Array's business and had an adverse impact on its marketing and sales efforts.

37. Defendants' unlawful pressure on TÜV to retract the TÜV Report was successful and caused harm to Array.

Array's Engagement of DNVGL

38. In December 2018, Array contracted with another independent third-party engineering firm, DNVGL, to study the effect of "backtracking" on mitigating production losses due to shading of solar modules from adjacent rows in a solar power plant.

39. Backtracking means rotating the solar panels to avoid shading in low light situations. For example, when the sun is in either horizon, each row of solar panels may cast shadows on an adjacent row. This shading may occur to varying degrees depending on the variability of the terrain on which the solar trackers, and associated solar panels, are installed.

40. DNVGL conducted its study at a large solar power plant located on the east coast.

41. This project includes both Array and NEXTracker trackers.

42. Accordingly, as part of DNVGL's work, DNVGL studied the effect of backtracking for both Array's tracker and for NEXTracker's tracker. The results of DNVGL's study show that backtracking, and the associated backtracking algorithms, are less effective at mitigating energy losses from shading than other solutions aimed at minimizing these losses.

43. NEXTracker and Shugar learned about the DNVGL study and its forthcoming conclusions. And NEXTracker and Shugar resolved to employ the same coercive business practices with DNVGL to suppress the study that proved successful with TÜV.

44. For example, on or about April 19, 2019, Shugar called an engineer with DNVGL, Tim Townsend, while Townsend was at home. Shugar pressured Townsend to suppress the results of the study. He made thinly veiled threats that if DNVGL published the

results of the study, NEXTracker would not direct work to DNVGL and intimated that he would choke off DNVGL's supply of work.

45. Shugar and NEXTracker resorted to these efforts because the results of the DNVGL study appear to minimize the commercial benefit from NEXTracker's backtracking algorithm product called TrueCapture.

46. On or about May 1, 2019 Shugar called Townsend again with the same demands. Shugar made the same thinly veiled threats of business consequences if Townsend did not suppress the results of the DNVGL study. NEXTracker and Shugar have not withdrawn these threats of retaliation. Shugar and NEXTracker have continued to put undue and unlawful pressure on DNVGL.

47. Array intends to reference the results of the forthcoming DNVGL as part of its efforts to market and sell its trackers in the market.

## FIRST CLAIM FOR RELIEF
**(Intentional Interference with Contractual Relations Regarding TÜV)**

48. By this reference Array realleges and incorporates the foregoing paragraphs as though fully set forth herein.

49. Array and TÜV entered into an enforceable contract for services. TÜV was to assess the risks associated with component failures, analyze the relative operation and maintenance costs, and calculate the net present value of linked-row architectures and unlinked-row architectures and present its findings in the TÜV Report.

50. Defendants knew of the contract and contractual relationship between Array and TÜV, and they knew the impact the TÜV Report would have in the marketplace.

51. Defendants' unlawful conduct made performance of the contract more expensive and difficult, and Array did not receive the full benefit of the study for which it paid TÜV a significant amount of money in excess of $75,000. Array also did not receive the full benefit of

its marketing campaign and strategies with respect to the TÜV Report, for which Array spent significant time, effort, and expense developing.

52. Defendants knew that their conduct would disrupt the performance of the contract between TÜV and Array. Defendants intended a disruption of the contractual relationship and intended to make performance impossible—or at least more expensive and difficult.

53. Array was substantially harmed by Defendants' unlawful conduct. Array paid TÜV in excess of $75,000 for the TÜV Report, the efficacy and reliability of which was called into question in the market as a result of Defendants' unlawful conduct, rendering Array's payment to and contract with TÜV meaningless. As a result of Defendants' unlawful conduct, TÜV publicly retracted the report, causing further harm to Array due to the perception of diminished legitimacy of the report's conclusions to many potential customers. And Array was harmed because its investment into developing its marketing strategy was rendered valueless without the TÜV Report.

54. Defendants' actions were a substantial—indeed, the only—factor in causing Array's harm. Without Defendants' coercive business practices and threats against TÜV, TÜV would not have retracted its report or refused to publicly defend the report's reliability and validity.

55. Wherefore, Array has been damaged in an amount to be proven at trial, which amount is in excess of $75,000.

## SECOND CLAIM FOR RELIEF
**(Intentional Interference with Contractual Relations Regarding DNVGL)**

56. By this reference Array realleges and incorporates the foregoing paragraphs as though fully set forth herein.

57. Array also entered into an enforceable contract with DNVGL. DNVGL was to analyze the effectiveness of backtracking to mitigate energy losses due to shading and issue a

COMPLAINT

9

memo detailing the efficacy of backtracking technology, including that used by unlinked-tracker architectures like NEXTracker uses.

58. Defendants NEXTracker and Shugar knew of the contract and contractual relationship between Array and DNVGL and knew of DNVGL's preliminary findings that would be included in DNVGL's forthcoming report.

59. NEXTracker and Shugar intended a disruption of the contractual relationship and intended DNVGL to suppress the results of the study, intending to make the performance of the contract impossible or, at a minimum, more expensive and difficult.

60. Array has been substantially harmed by NEXTracker's and Shugar's actions relating to DNVGL's contractual relationship and continues to be threatened with harm as a result of NEXTracker's and Shugar's unlawful conduct, which is similar to the conduct with which Defendants engaged with regard to the TÜV Report.

61. NEXTracker's and Shugar's conduct is a substantial—indeed, the only—factor in causing Array's harm.

62. By reason of the foregoing, Array is entitled to relief, including injunctive relief, against defendants NEXTracker and Shugar for intentional interference with contractual relations.

### THIRD CLAIM FOR RELIEF
(Unfair Competition—Cal. Bus. & Prof. Code § 17200 et seq.)

63. By this reference Array realleges and incorporates the foregoing paragraphs as though fully set forth herein.

64. Defendants engaged in unlawful business practices when they pressured TÜV—and Shugar and NEXTracker engaged in unlawful business practices when they pressured DNVGL—to suppress conclusions unfavorable to NEXTracker and threatened retaliation if the companies did not comply. These actions are unlawful under California law, including but not limited to the causes of action herein alleged.

COMPLAINT

10

65. Defendants engaged in unfair business practices by coercing TÜV—and NEXTracker and Shugar engaged in unfair business practices by coercing DNVGL—into complying with their demands. These actions were intended to prevent and suppress fair and honest competition in the marketplace and caused (and continue to cause) Array harm.

66. By reason of the foregoing, Array is entitled to relief against Defendants for unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Array prays for judgment against NEXTracker and Shugar as follows:

A. A judgment finding Defendants liable for the claims herein alleged.

B. An order from this Court requiring Defendants to withdraw their allegations of inaccuracies in the TÜV report so that TÜV may republish its report.

C. A preliminary and permanent injunction prohibiting Defendants from further contact with TÜV regarding its report.

D. A preliminary and permanent injunction prohibiting NEXTracker and Shugar from contacting DNVGL regarding the impending release of DNVGL's report.

E. Pre-judgment and post-judgment interest on damages proved at trial at the maximum rate allowed by law.

F. Exemplary and punitive damages for Defendants' intentional and malicious acts.

G. Attorney fees and costs incurred by virtue of this action.

H. Such other and further relief as the Court may deem appropriate under the circumstances.

## DEMAND FOR JURY

Array requests trial by jury.

DATED: September 18, 2019

                              Tyson K. Hottinger
                              Kirk R. Harris
                              Michael J. Howell
                              MASCHOFF BRENNAN LAYCOCK
                                    GILMORE ISRAELSEN & WRIGHT PLLC

                              By: */s/ Tyson K. Hottinger*

                              Attorneys for Plaintiff
                              ARRAY TECHNOLOGIES, INC.

COMPLAINT